Good morning, Your Honors. May it please the Court, Andrew Parnes, CJA Counsel for Enrico Ponzo. This case must be looked at in the context that Mr. Ponzo is representing himself at the time of the plea negotiations in this case and as also at the time of sentencing. A month before sentencing, he requested the Court to approve $1,200 for a mental evaluation by Dr. Hodgson-Buehler, and that's contained at ER 169 to 171. It set forth the basis for the need to mitigate his potential sentence. It talked about his obsessive-compulsive disorder. It talked about other mental issues. This obsessive-compulsive disorder that supposedly would have led to him hoarding these weapons? Yes, as a potential basis for hoarding the weapons, also why he would collect so many for sporting purposes. It also stated somewhere that his wife, that a lot of these weapons were actually his wife's weapons. Yes, that he had possessed those. Some were his wife's. Also, it should be noted that in the pre-sentence investigation report at paragraph 104, the pre-sentence investigator noted that there was a potential for departures based on his age, his mental and emotional state, and potential diminished capacity or mental condition. So that those were noted in the pre-sentence investigation report. As a result, and Mr. Ponzo requested it, the Court simply denied it, saying that it would not be relevant. I think the government, in its reply brief, says, well, you know, if he had been represented by counsel, would counsel have asked for such an evaluation? I think in this situation, the counsel very well would have asked for that investigation. What is the prejudice? And I say that because he also, I believe, told the Court that he had other reasons. Well, first of all, he said he discussed hoarding already without an expert. But he also said he had a lot of weapons because they were an investment, and some of them belonged to his wife. So, I mean, it's hard to see how an expert would have altered the way the Court looked at this. Well, I think that one of the things is we don't know how the Court would have looked at it. But there are a lot of times when mental condition does not necessarily have to be related specifically to the nexus of the event. And so that a person's mental condition and emotional state would be relevant in terms of mitigating factors. We don't require it to be a nexus to that. And so I think that the psychologist may very well have provided information. Do you really think that in the context of a person who's been indicted for all the things that he was indicted for, this really would have made a difference? I mean, he cut a really great deal for himself. Yes. There's no question that that is involved. But also, you have to remember that the allegations of what he was charged with back in Massachusetts occurred 20 years before he was before the judge in this case. And that he had suffered a number of mental issues related to his wife's spouse leaving with the child, all those kinds of things. And he had seen a psychologist in 2010. And so now, several years later, and in being incarcerated, I think it's important to have that aspect. And the court just said no. Similarly, when it talked about what happened in Ada County and the jail records, and the court said basically, you can't subpoena a witness for that. You're prevented from putting on two aspects. And both of those really were used against him. Let me ask you this. It's unclear to me anyway, from the record. What did the PSR include concerning his conduct at the jail? It had a one-paragraph statement that he had 90 violations, five, and I could... So that just didn't come out of the words of the prosecutor? That was in the pre-sentence? Pre-sentence report, yes. And so he asked to have that, a witness basically, to talk about that. I couldn't find that the district judge actually ruled specifically on the motion to subpoena the deputy. He did not. And it was filed one day before. He was in custody. He was seeking to do that. The court just ignored it. And the government does point out, well, Mr. Ponzo didn't ask for a continuance. He didn't ask for it. But when he raised the issue at the sentencing, the court said, we don't have to worry about that. And the court actually said statements about, I know Ada County Jail, and they're a good jail. And then basically said, I'm going to essentially hold this against you. So what should the judge have done at that point? Well, I think the judge should have either said, I'm not going to consider your behavior, that would be one way to deal with it, or to say, let's continue the hearing and we'll come to a factual basis and have a hearing. That's why it's a due process violation. If I may move to the issue of the sporting use. The Prater case is very clear that a person who is convicted or pleads guilty to possession of a firearm is entitled to a six-level offense reduction, if the items are used for sporting purposes. The judge at sentencing simply said, that's immaterial, I'm not going to consider that, it's not relevant, you possess the weapon. Well, yes, but in the alternative, didn't the court also say that he didn't think it applied factually in the alternative? No, he said it's immaterial, I'm not going to consider it. It's basically not, it is not before me, and that's basically... In your view, does the record demonstrate that every single one of these weapons was unrelated to anything except sporting? No, I think the record, well, there's no, I think the record is, because the court said, we're not going to consider that, there was no real evidence. Other than his statements that they were locked away. Here's my problem with it, I think the court said that, I may be misremembering this, we have a lot of cases today, but I thought the court said that at least one of these weapons was possessed in connection with his flight from prosecution in Massachusetts. Is that correct? Am I right about that? No, I think what happened in this case is that the court didn't make anything specific about that. He made a finding that these were in relation to the flight. His flight from prosecution for arson and murder and all those things. Right, 20 years ago. And did your client challenge that? Yes, he did. My understanding is he did not. No, he challenged that. That finding? He challenged that finding in the trial court. I did not raise that issue on appeal, and maybe I should have, but he raised, he objected to that finding in the district court. Did the court rule on that objection? No, I don't think he did. He just basically followed the PSR in that case. And then that goes to, that finally goes to the plea agreement issue. Let me stop you, I'm sorry. Sure. But wasn't there also evidence in front of the judge in terms of what was found in that safe, that there were four or five false identities that had been identified? That had been developed over the years by using deceased children information? That suggests an ongoing effort to avoid... There may be an ongoing effort. The question is whether the guns are related to that ongoing effort. I mean, they were certainly not there for defensive purposes. They were locked away. They were not anywhere. He had completely changed in terms of his approach to things, and I think it's just not supportive. But if it is supportive, then basically he's entitled to a concurrent sentence. The guidelines require him to have a concurrent sentence, and that's what should have been done, and the government argued against that. You have a little less than a minute left, if you'd like to save any for rebuttal. May it please the court, my name is Christian Asker, and I represent the appellee of the United States in this matter. I'll start with the plea agreement, if I may. And the plea agreement contained two sentences that addressed the sentencing recommendations in this case. First, the government agreed to recommend a sentence within the guidelines. That sentence was immediately followed with the parties are free to recommend that the sentence run concurrently, partially concurrently, or consecutively to the defendant's previously imposed federal sentence in the Boston case. When this plea agreement was made, obviously this was before the precedence report came out, and neither party was sure whether the guidelines were going to suggest a concurrent or a partially concurrent or a consecutive sentence. But both parties were aware of several important things. Both knew that the defendant had already been sentenced to 336 months in the District of Massachusetts, and both knew that even a statutory maximum sentence in this case, if run concurrently, well, that the sentence in Boston greatly exceeded even the statutory maximum. Both parties knew that the government had previously dismissed the aggravated identity theft counts, which carried a mandatory consecutive sentence, and both parties knew that a concurrent sentence in this case would ultimately, as the district judge put it, would result in no sentence at all. In construing these two sentences, the court has to determine what the defendant reasonably understood the terms of the agreement was when he pled guilty. Now, it's true that the government did not spell out a hyper-technical scenario, in which whether some guidelines required a concurrent or some guidelines required a consecutive. It simply said that the parties retained the right to recommend either a concurrent or a consecutive sentence. I'm sorry, can I jump ahead to the issue about the mental examination? Certainly. It seems to me that counsel for the defense is correct, that there are certainly circumstances where a mental evaluation can be of benefit to the court, even though it's not directly related to the issue in the case, as background information about the person. In this case, there were claims of OCD and post-traumatic stress syndrome. So why shouldn't the judge have allowed it? Well, I think it's important to note that the suggestion of OCD was merely a self-serving statement by the defendant that it was suggested that maybe he had OCD. He didn't state that any doctor had suggested that or who suggested that. There were some medical records? There were medical records initially that diagnosed him with ADHD. But it was the defendant's own suggestion that it had been suggested to him. He didn't state who suggested that. And I think the court correctly noted that in the context of the ongoing litigation in this case, the defendant was held responsible for obstruction of justice because he attempted to influence a witness. I think he was convicted of that in Boston. And so after he was arrested, there were jail phone calls in which he was telling his common-law wife that she needed to take responsibility for these guns. And then that didn't work. And then he suggested, well, these were an investment. And it was a joint operation by my common-law wife and myself that we were going to invest money in these guns. And then when that didn't work, it was, well, these were really for sporting purposes. You know, we would go target shooting. And then the fourth decision or the fourth choice was, you know, I collected these because I was OCD. But the defendant wasn't prevented from making that argument. He made that argument at sentencing to the court, along with the other arguments and the alternative that he possessed these guns. Well, in theory, they would have been stronger arguments had he had an expert who agreed with him. You know, if an expert said that he was suffering from OCD, the court has to look to whether that would override the situation in which a defendant who was fleeing charges of conspiracy to commit murder, extortion, racketeering, cocaine distribution, who was currently living underneath a false name, had identification-making kits in his possession, numerous fake IDs, logs of deceased children of OCD, whose identity he could steal. What was the true motivation for possessing these firearms? And so I think you were correct in your response to the defense counsel, or to Mr. Parnes, that that made any difference. Well, that was a question. And that is the question. What is our standard of review on this issue? The standard of review would be an abuse of discretion, as would the other due process, a violation of the evidentiary hearing regarding the... Well, are there any other questions on that before I... I don't think so. I guess I'll spend the last few minutes I have talking about the collection for supporting purposes. I'm sorry. I apologize. I have one question I want to ask. The dialogue between the judge and the defendant on page 24 of the record, where they're talking about the incidents at the jail, and the defendant says, is the court not going to use that as a sentencing factor, is what you're saying. And the judge said, the fact there were 90 disciplinary actions seems very likely to be taken into consideration. And then later on, when he was imposing sentence, he made reference to that. Shouldn't the defendant have had an opportunity to challenge that information? He did, and he was given that opportunity. He was the best witness as to those allegations, and I think it's important to note that the defendant... Well, maybe there were other people, other witnesses who might have... He certainly was given the opportunity to call witnesses. He called two neighbors, but then he also asked a subpoena of the deputy. The eve before sentencing, he filed an ex parte motion that the government was obviously unaware of. He was provided the opportunity to call witnesses. He called two. He was asked if there were any other witnesses he wished to call. He said no. And the court would have to look at the purpose. There was no justification that this witness, this deputy that he provided the night before sentencing, would present evidence that was favorable to him. And you have to look at it in the context of the civil suit that he had filed against the 80 County Jail, and his desire to litigate that civil suit at his criminal sentencing. And that's why in my brief, I said you have to look at the context of the judge's statement that we're not going to get into this right now. That was only after he said, I believe this opens up my civil case against the 80 County Jail. And the court said, no, we're not going to go into that. But the court did allow him to present his side of the story. All right. Thank you. As to the sporting collection purposes, I want to correct something. And that's that on the sealed documents 28, I'm sorry, excuse me, on ER 34, the district court stated that the court finds the probation officer's comments adequately address the concerns and objections of the defendant and the court adopts the same as its own response to the objections. Now, while it is true that the district court on two occasions said that it was immaterial that he possessed firearms because he was a felon, the reasoning why he adopted or why he denied the defendant's motion as to the sporting or collection purposes reduction is set forth that he adopted in the addendum to the pre-sentence report that the probation officer crafted. And that was on sealed documents 28. And the probation office said that he wasn't entitled to the four level reduction for collection or sporting purposes because he possessed those, at least some of the firearms in connection with another felony offense. And that being his unlawful flight to avoid prosecution and the probation officer. Is that still valid? I mean, if he possessed it in relation with fleeing there 20 years ago? Well, and I believe it was addressed previously that these firearms were kept in the same safe as a fake identity set. All the log books on how to have a false identity. The defendant was still living underneath the name Jay Shaw. He was participating in family court in the District of Idaho under the assumed name of Jay Shaw. And that's all the time I have. If there's no further questions. I don't believe so. Thank you. Mr. Barnes, you have 45 seconds or thereabouts, I think. I'll try not to speak as fast as some ads. I would just direct the court to page 35 of the excerpts, which is right after page 34. And the court says, I mentioned just a moment ago, it's immaterial, you're a convicted felon. You have no right to possess firearms. That's why the decision was made. It was made on the fact that it was immaterial. Let me talk about 5G 1.3 in the 30 seconds or so I have remaining. And the government negotiated this plea agreement. They agreed to a within guideline sentence. There was no discussion of 5G 1.3. When the initial report was filed, which is in the sealed PSI, the government made no objection to the 5G 1.3 finding that the pre-sentence investigator requested. It was only in an initial sentencing memorandum close to the time of the sentencing that the prosecutor acknowledged that this was immaterial. In contradiction to 5G 1.3. But that is a guideline. The plea agreement, again, Mr. Ponzo is not represented by counsel, says the government will recommend a sentence within the guideline range. The guideline range is said that if there's a finding that it's in relation to another crime, it shall run concurrently. Thank you.
judges: Tashima, Graber, Mihm